## FIRST NAT. BANK OF MATHIS v. DICKSON et al.

### No. 9039.

Court of Civil Appeals of Texas. San Antonio.

March 29, 1933.

Rehearing Denied April 26, 1933.

Johns, McCampbell & Snyder, and Kleberg & Eckhardt, all of Corpus Christi, for appellant.

Beasley & Beasley, of Beeville, for appellees.

MURRAY, Justice.

The First National Bank of Mathis, appellant, sued the First National Bank of George West, appellee, for the sum of $875. J. H. Dickson, Mrs. L. P. Reed, and L. P. Reed, originally defendants below, were dropped from this cause by amended pleadings.

Mrs. L. P. Reed presented to J. R. Nelson, cashier of the Mathis bank, a check for $875, signed by J. H. Dickson, payable to the order of Mrs. L. P. Reed and drawn on the George West bank, asking the Mathis bank to cash the check.

Nelson called the George West bank over the telephone and talked to one McCreary, a teller. Nelson informed McCreary that he had the above-described check, and asked if the George West bank would pay the check. The reply was, "Yes, if it bore the genuine signature of J. H. Dickson." McCreary at the time of the trial was insane and confined in an institution for demented persons. The check bore the genuine signature of J. H. Dickson, but was filled in for the sum of $875 without authority from Dickson, and was therefore a forgery. The Mathis bank cashed the check and paid Mrs. L. P. Reed the $875. Its cashier would not have cashed the check had it not been for the telephone conversation referred to. The check was sent through ordinary channels for collection, but was not paid by the George West bank; Dickson having "stopped payment" thereon.

The promise of the George West bank was a verbal promise to answer for the debt of J. H. Dickson and not to subserve some purpose of its own; the intention of the George West bank being to convey to the Mathis bank the information that J. H. Dickson had on deposit with it a sufficient sum of money to cover said check.

The above statement of the case is taken from the trial judge's findings of facts. These findings are not attacked in any way. The trial was before the court without a jury.

Article 5941, § 132 (Rev. St. 1925), reads as follows: "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

It is clear from this provision of the Uniform Negotiable Instruments Act, adopted by this state in 1919, that an acceptance of a check or bill of exchange must be in writing to be valid and binding.

Appellant contends that this is not a suit on the check but is a suit on breach of contract. In other words, that the George West bank had contracted to accept this check and breached that contract. We do not concur in this fine distinction. If this contention could be upheld, the statute which provides that an acceptance must be in writing would be rendered meaningless.

Appellee cites First National Bank of O'Donnell v. Citizens' National Bank of Lubbock (Tex. Civ. App.) 38 S.W.(2d) 648. We distinguish this case from the case at bar, in that there the bank cashed a draft and not a check. The draft was drawn by the party to whom the money was paid. There was no third person involved as there is here. In other words, this is what happened in the O'Donnell case: Bank No. 1 called bank No. 2 over the telephone and said in effect: "We have your man Hamilton here in our bank. He is a stranger to us. He says you will credit him. He wants to borrow $275.00. We will let him have the money for you if you want us to. What shall we do?" Bank No. 2 replies: "Go ahead and let him have the money." In this way an original obligation was created on the part of bank No. 2.

In the case at bar a third person was presenting the check of Dickson. Both banks were charged with knowledge of the fact that Dickson had a right to "stop payment" on the check until it was paid by the George West bank or certified to or accepted in writing by such bank. Under such circumstances an oral acceptance was invalid.

The trial court's findings of facts, paragraph 9, read as follows: "The promise made by the defendant bank was a verbal promise to answer for the debt of J. H. Dickson and not to subserve some purpose of its own. The intention of the defendant bank being to convey to plaintiff bank the information that J. H. Dickson had on deposit with defendant bank a sufficient amount of money to cover said check."

Where the facts are as above found, the courts of this state and many other states, since the adoption of the Uniform Negotiable Instruments Act, have held that such an oral acceptance is void and that the accepting bank could not be held either upon the "bill" or the "promise." Elyria Savings & Banking Co. v. Walker Bin Co., 92 Ohio St. 406, 111 N. E. 147, L. R. A. 1916D, 433, Ann. Cas. 1917D, 1055; Baltimore Ry. Co. v. Alexandria First Nat'l Bank, 102 Va. 753, 47 S. E. 837; Lewin v. Greig, 115 Ga. 127, 41 S. E. 497; Ballen & Friedman v. Bank of Kremlin, 37 Okl. 112, 130 P. 539, 44 L. R. A. (N. S.) 621; Van Bushkirk v. State Bank, 35 Colo. 142, 83 P. 778, 117 Am. St. Rep. 182; Seattle Shoe Co. v. Packard, 43 Wash. 527, 86 P. 845, 117 Am. St. Rep. 1064; Huffman v. Farmers' Nat. Bank (Tex. Civ. App.) 10 S.W.(2d) 753; Womack v. Durrett (Tex. Civ. App.) 24 S.W.(2d) 463.

If the case of First National Bank of O'Donnell v. Citizens' Nat'l Bank of Lubbock, supra, is to be construed as holding that an oral acceptance of an inland bill of exchange is valid, or that suit may be maintained upon the breach of promise to accept, we do not agree with that opinion. It makes no difference whether the suit is upon the acceptance, the breach, or upon estoppel, the effect is to compel the bank to make good its oral promise to pay the bill, and, under the provisions of article 5941, § 132, this cannot be done. To hold otherwise would be to set at naught this provision of the Uniform Negotiable Instruments Act.

The judgment is affirmed.